UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARY KATHERINE DAY-PETRANO,
DAVID FRANK PETRANO,

Case No.: 3:26-cu-519-JEP-PDB

Plaintiffs,

v.

JOHN MILLER, individually,
BRADFORD COUNTY TELEGRAPH, INC.,
GEORGE PAUL "GORDON" SMITH, SHERIFF
OF BRADFORD COUNTY, FLORIDA, individually
and in official capacity, THE FLORIDA BAR,
FLORIDA SUPREME COURT, EIGHTH JUDICIAL
CIRCUIT OF FLORIDA, STATE OF FLORIDA,
and DOES 1-10, inclusive,

Defendants.

_____/

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiffs, MARY KATHERINE DAY-PETRANO, pro se, and DAVID FRANK

PETRANO, pro se, allege as follows:

I. NATURE OF THE ACTION

1. This action arises from systemic discrimination and denial of emergency relief in state

and federal courts, coupled with intentional threats and takings of property by private actors.

2. This is an action for declaratory relief, injunctive relief, monetary damages, and

takings relief arising from:

> Violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.
> §12131 et seq., due to systemic discrimination against autistic individuals in Florida
> state and federal court processes.

1

Violations of the Due Process and Equal Protection Clauses of the U.S. Constitution.

Takings and conversion of property and improvements valued at over $415,331.50, and loss of property and income rights, including dental and brain injury recovery valued at over $750,000.

Declaratory and injunctive relief statutes (28 U.S.C. §§2201–2202; Fed. R. Civ. P. 65)

Systemic autism bias and male-diagnosis bias that has denied Plaintiff Day-Petrano, and because of her autism family member Plaintiff Petrano, access to legal remedies, work, housing, medical care, and bar admission.

Threats by Defendants to evict Plaintiffs and seize improvements, despite prior assurances of property transfer and legal improvements investments.

3. Plaintiffs seek:

Plaintiffs seek immediate injunctive relief to prevent further deprivation of property, assets, and fundamental rights, as well as compensatory and punitive damages (where authorized) for ongoing harm.

Emergency protection of farm property improvements ($415,331.50) threatened by Miller, Bradford, and the Sheriff;

Declaratory and injunctive relief against systemic ADA violations and court access denials caused by The Florida Bar and Florida Supreme Court policies, practices, procedures, and patterns of ongoing systemic autism discrimination;

Compensatory, consequential, and punitive damages (where authorized) for lost property, lost income, lost dental/brain injury recovery ($750,000+), and reputational harm.

## II. JURISDICTION AND VENUE

4. Jurisdiction: 28 U.S.C. §§1331, 1343 (federal question and civil rights).

5. Supplemental jurisdiction: 28 U.S.C. §1367 for state-law claims (Takings/Conversion).

6. Venue: 28 U.S.C. §1391(b) — Defendants reside or conduct business in Bradford County, Florida; the property/farm and improvements are located there; the wrongful acts,

2

including publication, eviction threats, and denial of court access, occurred in this District and Circuit Court.

### III. PARTIES

7. Plaintiff MARY KATHERINE DAY-PETRANO: Elderly autistic individual, professional horse trainer, U.S. national champion, resident of Bradford County, Florida. Plaintiff has autism-related processing and communication characteristics that have been systemically mischaracterized as vexatious or improper in Florida courts. Plaintiff is a "qualified individual with a disability" provided Title II ADA reasonable accommodations by the Committee of Bar Examiners of the State Bar of California on the Bar Exam.

8. Plaintiff DAVID FRANK PETRANO: Elderly autism family member and caregiver to co-Plaintiff, barber, resident of Bradford County, Florida. Plaintiff is a "qualified individual with a disability" provided Title II ADA reasonable accommodations by the Florida Bd. Of BAR Examiners on the Bar Exam.

9. Defendant JOHN MILLER: Editor and principal of Bradford County Telegraph Inc., misrepresented property ownership, facilitating threats against Plaintiff's property.

10. Defendant Bradford County Telegraph Inc.: is a Florida corporation and owner of newspaper and disputed farm property located at 2501 SE 143rd Way, Starke, FL 32091, published ownership claims, threatened eviction.

11. Defendant GORDON SMITH, SHERIFF OF BRADFORD COUNTY, FLORIDA: a "public entity" under Title II of the ADA, threatens to enforce eviction and seizure threatened or intended of Autism financial and other supports property, acting under color of state authority in violation of Plaintiffs' civil rights.

3

12. Defendant THE FLORIDA BAR: a "public entity" under Title II of the ADA, failed to mandate Autism-specific training for all lawyers, maintains a discriminatory ratio of about 1 Autistic bar member to over 111,000 non-Autistic ("Neurotypical") bar members, conducts vexatious litigant CLEs teaching bar members and state judicial officers to target Autistic traits and characteristics for placement on Florida's vexatious litigant registry, contributing to systemic discrimination and denial of court access.

13. Defendant FLORIDA SUPREME COURT: a "public entity" under Title II of the ADA, permitted enforcement of vexatious litigant rules, policies, and registry that discriminate against Autistic litigants and deny emergency relief, prevent lower Florida appellate and trial courts from granting Title II ADA blanket extra time reasonable rules modifications by Defendant's retaining the exclusive jurisdiction over such rules modifications for themselves.

14. Defendant EIGHTH JUDICIAL CIRCUIT OF FLORIDA: a "public entity" under Title II of the ADA, has never provided Plaintiff Day-Petrano the blanket extra time reasonable rules modification in any of her cases that she requires for her Autism delayed information processing and immutable bottom-up language in any of Plaintiffs cases, mis-labeled authentic Autistic traits Plaintiff Day-Petrano cannot change—including her speech, as "vexatious."

15. Defendant STATE OF FLORIDA: a "public entity" under Title II of the ADA, responsible for systemic policies and practices enabling autism discrimination, loss of property, and denial of ADA accommodations.

16. At all relevant times, each of the Defendants acted individually and in concert with one another in committing the acts alleged in this Complaint. Plaintiffs are informed and believes, and on that basis alleges, that each Defendant participated in, authorized, directed, approved, or knowingly acquiesced in the unconstitutional conduct described herein.

4

17. Because many of the acts and omissions giving rise to Plaintiffs' claims were committed by multiple Defendants acting together, and because the specific roles of each Defendant are presently within the knowledge and control of Defendants and will be revealed through discovery, Plaintiffs refer to Defendants collectively in certain allegations.

18. By referring to Defendants collectively, Plaintiffs do not intend to suggest that each Defendant is liable for the acts of another solely by virtue of such reference. Rather, Plaintiffs allege that each Defendant is responsible for his or her own conduct and for the conduct of others acting in concert with them as described in this Complaint.

19. Plaintiffs are presently unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained.

20. Plaintiffs are informed and believes, and on that basis alleges, that each of the DOE Defendants was at all relevant times a law enforcement officer, supervisor, employee, agent, or representative of the governmental entity defendants and was acting within the course and scope of such employment or agency.

21. Plaintiffs are further informed and believe that each DOE Defendant personally participated in, directed, authorized, approved, or knowingly failed to prevent the unconstitutional conduct alleged in this Complaint.

22. The true identities of these Defendants are presently unknown to Plaintiffs because the relevant reports, personnel records, and incident documentation identifying the responsible officials are within the possession, custody, and control of Defendants and other governmental entities.

23. Plaintiffs will diligently seek discovery of the identities of these DOE Defendants and will amend this Complaint to substitute their true names once they are identified.

IV. FACTUAL ALLEGATIONS

A. Systemic Autism Bias and Court Access Denial

24. Plaintiffs have been placed on a vexatious litigant registry and enjoined from filing cases in Florida state courts due to Day-Petrano's autism traits (speech, processing speed, social characteristics).

25. Defendants improperly counted 9 of 12 federal cases and 2 non-final cases, contrary to Florida law before July 1, 2025. Both before and after that date, Defendants use the vexatious litigant law to conduct review over final federal cases and if a federal judge has not been harsh enough in their opinion, then to essentially re-decide the federal case by labeling Plaintiffs' "vexatious."

26. The orders and registry have permanently barred Plaintiffs from state court access, caused attorneys at Morgan & Morgan to withdraw from a $750,000+ dental and brain injury claim, and prevented Plaintiff from exercising legal rights.

27. This denial of court access constitutes Title II ADA violations, due process violations, and unequal treatment based solely on autism traits.

B. Property and Improvements

28. Plaintiffs invested $415,331.50 in farm improvements based on prior representations by Miller and Bradford County Telegraph Inc.

29. Defendants now threaten to evict Plaintiff and seize improvements, constituting takings without just compensation under the Fifth Amendment and conversion under Florida law (F.S. §825.101).

6

C. Professional and Financial Harm

30. Plaintiff Day-Petrano's U.S. national championship horse trainer business, the only source of sheltered and specialized work, has been disrupted due to systemic court access denial and discrimination.

31. Loss of access to courts and denial of counsel trained in autism has resulted in:

Loss of dental and brain injury recovery ($750,000+);

Ongoing (eight years of) dental infections contributing to breast cancer;

Loss of income, property rights, housing, and ability to engage in professional work.

32. The $15,000 per-case fee requirement and forced retention of untrained neurotypical counsel has blocked Plaintiffs from meaningful participation in court, constituting a deprivation of due process and civil rights.

D. Federal and State Actor Coordination

33. Defendants acted in concert to:

Deprive Plaintiffs of property rights;

Impose financial burdens;

Expose Plaintiffs to predators;

Enforce systemic autism bias.

E. Original Injury: Male-Biased Autism Research and Delayed Diagnosis

34. Plaintiff Day-Petrano was female and autistic, subject to late diagnosis due to historically male-biased research funded by the United States of America.

35. The "original injury" is the male-biased, late autism diagnosis, and the federal funding of flawed research that caused delayed identification, mislabeling, and systemic barriers to court access.

36. Misdiagnosis and delayed identification caused:

Mislabeling Autistic speech, traits, characteristics, behaviours, and Autistic needs as "bad," "bad faith," "vexatious" or "squatter"

Exclusion from fair court processes

Barriers to financial recovery, property, and professional work

F. Continuing Harm via State and Federal Court Systems

37. The "continuing harm" arises from:

The Florida Bar and state actors not mandating autism-specific training

Florida Supreme Court policies allowing untrained judges and lawyers to adjudicate autism-related cases without accommodations

Continuing failure to recognize Plaintiff Day-Petrano's late-autism diagnosis, the healing journey from the diagnosis, the revelations from the diagnosis of the mis-treatment, prejudice, and bias against her by the lawyers and judicial officers in the courts who lack specific-autism training, and the re-traumatization she continues to endure because of the ongoing and continuing lack of specific-autism educational training of Florida bar members and judicial officers.

Defendants like Miller/Bradford exploiting the systemic failures to seize property that the Autistic person and/or autism family worked and paid for that are a part of the Plaintiff Day-Petrano's approximately $3.6 million lifetime autism cost supports (per 2020 ScienceDirect research study).

The autism-untrained judges, lawyers, and state of Florida fail to protect these autism support monies and assets from repeatedly being taken away from the Autistic person and autism family.

Plaintiff Day-Petrano has repeatedly had money she worked for and earned taken away from her while being mis-treated as 'undeserving' because she is autistic.

Plaintiff Day-Petrano has repeatedly had real property taken away from her Plaintiffs paid for that is part of supports for her autism sensory profile and sheltered work site (horse farm necessary for her to earn a livelihood).

Plaintiff Day-Petrano was left with over eight (8) years of dental infections while dental infections are one of the causes of breast cancer, during which time she was diagnosed with breast cancer that spread to her lymph nodes because

8

her Florida state court access was blocked by vexatious litigant orders and registry.

Plaintiffs have been repeatedly directed by Eighth Judicial Circuit of Florida to pay $15,000 non-refundable money to opposing counsel for court access just to bring a case, in the face of Florida Defendants doing nothing to provide for Plaintiff Day-Petrano's $3.6 million unmet autism lifetime cost needs.

Plaintiffs have repeatedly been barred from access to the Florida state trial courts and Plaintiff Petrano from the Florida Supreme Court by being directed to hire a Neurotypical bar member with no specific autism training, unable to provide effective assistance to an autistic individual, and to censor Plaintiff Day-Petrano's different Autistic speech and viewpoint.

In every single case, within the first few seconds of judicial officers' interactions with Plaintiff Day-Petrano, the judicial officers become implicitly biased and hostile, an occurrence supported in the scientific literature that occurs when judicial officers lack specific autism implicit bias training. This hostile bias does not change over the course of a case.

Judicial officers use unwritten social rules that the autistic individuals and Plaintiff Day-Petrano do not understand to adversely decide Plaintiffs' cases and mis-treat Plaintiffs as undeserving of any remedy ever. None of these social rules are written down anywhere in court materials.

In virtually every single case, Plaintiffs are mis-interpreted and mis-understood with devastating and catastrophic consequences because Defendants use no autism language interpreters/translators and mis-interpret and mis-read Plaintiff Day-Petrano's autistic speech and autistic behaviours—including motor impairments over which she has no control.

Counting up the unsuccessful cases to an arbitrary and capricious number (5 within 5 years before July 1, 2025 and 3 in 7 years after July 1, 2025) that has no connection to autism litigation reality to label Plaintiffs' vexatious litigants and bar their access to the state courts.

38. Vexatious litigant registry listing is for a lifetime with no way off. No post-order relief is allowed even for fraud, mistake, due process violations, or miscarriage of justice.

39. The vexatious litigant regime does not require Title II ADA reasonable accommodations in the cases being counted as unsuccessful, in the case at hand, or in making a request for leave under the vexatious litigant statute.

40. The vexatious litigant statute does not require any individualized assessment.

41. Once a vexatious litigant label is placed on an autistic individual and autism family, Florida courts then allow Florida bar members to use it as a stereotype snap-judgment label to irreparably prejudice every future case.

42. The Florida Bar and Florida Supreme Court:

   Fail to require autism-specific training;

   Fail to enforce accommodations and blanket reasonable rules modifications under Title II ADA;

   Enforce pretextual filing and fee rules under the vexatious litigant regime that target autism and discriminate against autistic litigants;

   Allow systemic denial of emergency relief in both state and federal courts. Federal courts have misapplied rules, ignored evidence, or pretextually denied motions for emergency relief and accommodations for autism, which compounds the harm. This shows the injury is ongoing and multi-jurisdictional, not limited to one court system.

43. This failure to require mandatory specific-autism educational training percolates up into federal courts as many federal judicial officers are selected from members of The Florida Bar; federal bankruptcy courts and other federal filings:

   Repeatedly misapply procedural rules or deny emergency motions due to lack of autism accommodations;

   Misinterpret and misunderstand Autistic speech, language, motivations and intents, and behaviours resulting in an almost 100% risk of mis-interpretation.

   Result in destruction of Autism financial and other supports, property improvements, and access to remedies.

Result in almost no bankruptcy courts allowing autistic individuals access to a bankruptcy court, reorganization process, or discharge—even of student loans.

44. These systemic failures create ongoing and irreparable harm, including:

Loss of $415,331.50 in farm improvements

Loss of almost $5,000 in property tax refunds Plaintiffs paid for a mobile home that was never titled in their names and never transferred out of the seller's name

Loss of $750,000+ in dental and brain injury recovery

Dental infections being one of the indivisible causes of Plaintiff Day-Petrano's breast cancer

Exposure to repeated predatory actors targeting and thefting Plaintiffs' money and property or abusing Plaintiff Day-Petrano (John Miller and Bradford's uninhabitability conditions against an autistic female undergoing breast cancer treatment—no power for almost 7 years, no heat or air conditioning, no hot water for Plaintiff Day-Petrano to take a shower)

Denial of fundamental right to work and earn income (repeated refusal to order private actors to pay Day-Petrano for work she did and repeated takings of property Day-Petrano worked and paid for).

Repeated attacks by opposing counsel on autistic Day-Petrano, e.g. "Drop your case against my clients or I'll make sure you never get a bar admission anywhere," followed by the filing of a vexatious litigant motion or threats to do so.

Blacklisting Plaintiffs with a type of scarlet letter (vexatious litigant registry) that is picked up in all types of background checks through AI.

The Florida Supreme Court has never investigated or studied what happens to victims of the vexatious litigant registry, or what effect it has on placing special needs developmentally disabled autistic individuals on the registry or how it destroys an autistic individual's business income because the vexatious litigant law and registry makes it impossible to enforce business contracts. This law and registry are no longer the "least restrictive means" due to the very recent availability of AI that can assist in translation of Autistic language into Neurotypical short and concise language standards.

State actors, together with private parties, have systematically on an ongoing and continuing basis taken away everything Plaintiff Day-Petrano has worked for including destroying her U.S. National level horse training business from the prime of

her life through the present time, and leaving her with eight (8) years of dental infections, breast cancer spreading into her lymph nodes (27 lymph nodes removed), repeatedly taking away the properties on which her horse business operates, refusing to pay her for work she performed, leaving her broken and with only $199 per month of retirement income (in the face of a $3.6 million lifetime autism cost none of the Defendants are helping to fund), letting John Miller and Bradford cut off Plaintiffs' income and lapse Day-Petrano's cancer policy she can never get back with a high-risk of breast cancer reoccurrence, and now John Miller and Bradford want to take Day-Petrano's Autism horses and ponies and sheltered work equipment – and none of these Defendants will protect her, give her court access, or a fundamentally fair and impartial court process.

G. Private Actor Threats

45. Defendants Miller and Bradford County Telegraph Inc. now threaten eviction and seizure of property and improvements that Plaintiffs earned and that are autism support assets, exploiting systemic court failures.

46. Sheriff is prepared to enforce eviction or squatter complaints, compounding harm.

47. Florida's squatter statutes are of the same type as vexatious litigant statute, whereby no Title II ADA reasonable accommodations are required to be provided, no individualized assessment is required, and they can be used to make a takings of portions of the $3.6 million lifetime autism costs supports that the autism family has paid for.

48. Florida's squatter statutes provide no pre-deprivation hearing and operating together with Florida's vexatious litigant statute, no post-deprivation hearing is provided, either.

49. Sheriff has not protected Plaintiffs from thefts or financial exploitation while allowing, enforcing, and threatening to enforce Miller's and Bradford's continuing elderly disabled financial exploitation.

50. Florida Defendants have no autism policy or protections to ensure no part of an autistic individual's $3.6 million in lifetime autism costs supports or assets are taken from the autistic person. Instead, the Florida state court entities routinely allow the looting by others of

these autism financial supports and assets through fundamentally unfair court proceedings in which none of the lawyers and none of the judicial officers have any specific-autism educational training.

H. Systemic Failures and Enabling Harm

51. The Florida Bar and Florida Supreme Court fail to mandate autism accommodations

52. Judges and clerks in state and federal courts consistently misapply rules due to lack of autism training and mis-interpret the facts because they cannot understand Autistic language.

53. This failure has a direct causal link to the loss of Plaintiffs' property, financial claims, and denial of emergency relief

54. As a direct and proximate result of The Florida Bar's and Florida Supreme Court's failure to mandate autism-specific training, Plaintiff's rights have been systemically denied, including access to emergency relief in both state and federal courts, loss of property improvements, and deprivation of financial remedies.

I. Denial of Emergency Relief

55. Plaintiffs repeatedly requested emergency hearings, protective orders, or immediate remedies in both state and federal courts.

56. Courts ignored or misinterpreted filings, refused accommodations, or imposed pretextual barriers (e.g., vexatious litigant claims, filing fees, requirement for neurotypical counsel without autism training).

57. As a result, Plaintiff Day-Petrano's autism financial supports, property, and improvements were exposed to seizure or loss.

J. Misinterpretation of Procedural Rules

58. State and federal  bankruptcy courts misapplied rules, including:

Refusing to consider autism-related accommodations;

13

Treating prior filings as "vexatious" when federal law prohibits counting certain cases.

59. These misinterpretations are systemic, discriminatory, and denied Plaintiffs their right to fundamentally fair adjudication.

### K. Pretextual Reasons and Systemic Bias

60. Defendant state courts and federal and bankruptcy courts have consistently used pretextual reasoning to deny Plaintiffs relief, including:

Mischaracterizing Autistic communication style or processing time as vexatious behavior;

Denying emergency relief for property protection and health concerns;

Ignoring or minimizing evidence of financial, medical, and property harm.

### L. Consequences

Loss of $415,331.50 in farm improvements

Loss of $750,000+ dental/brain injury claims

Exposure to predatory actors and theft

Inability to access courts to defend property or obtain relief, violating Title II ADA, Due Process, and Equal Protection

61. The threat is ongoing, not hypothetical — both state and federal systems are failing to safeguard Plaintiff Day-Petrano's autism property, livelihood, and health.

62. The harm is systemic, multi-jurisdictional, and ongoing. The courts themselves have become part of the discriminatory pattern by ignoring emergency needs.

### V. TOLLING OF STATUTE OF LIMITATIONS

63. Plaintiffs realleges and incorporates by reference all preceding paragraphs.

64. The statute of limitations applicable to Plaintiffs' claims is equitably tolled because of Plaintiff Day-Petrano's breast cancer/breast cancer treatment medical incapacity, __ Defendants concealed material facts relating to the constitutional violations alleged herein.

14

65. At the time the violations occurred, Defendants failed to disclose and actively concealed the facts necessary for Plaintiff to reasonably discover that his constitutional rights had been violated.

66. Despite exercising reasonable diligence, Plaintiffs could not have discovered the existence of the constitutional violations until approximately April 2025 when Defendant Florida Supreme Court's Vexatious Litigant Workgroup # 2 found the vexatious litigant law needed to be amended to cunt federal cases and Florida's Legislature began the process of amending that law, when Plaintiff first obtained documents and information revealing Defendants' conduct.

67. Upon discovery of these facts, Plaintiffs diligently investigated the matter and filed this action within a reasonable time thereafter and after their Chapter 11 automatic stay was lifted.

68. Because Defendants' concealment prevented Plaintiffs from discovering the basis of his claims earlier, and due to the continuing violation doctrine, the statute of limitations were equitably tolled until the date Plaintiffs discovered, or reasonably should have discovered, the violations.

69. Accordingly, all of Plaintiff's claims are timely.


V. CLAIMS FOR RELIEF

Count I – Title II ADA Violation (42 U.S.C. §12131 et seq.)

Against The Florida Bar, Florida Supreme Court, Eighth Judicial Circuit of Florida, State of Florida

70. Denial of access to courts, emergency relief, and accommodations based on autism

71. Defendants denied Plaintiff access to public services (courts), failed to provide reasonable accommodations, and caused systemic discrimination based on autism.

15

Count II – 42 U.S.C. §1983 Civil Rights / Equal Protection / Due Process

72. Against state actors enforcing policies or failing to provide accommodations

73. Denial of fundamental rights, emergency relief, and fair process

74. State actors violated Plaintiffs' due process and equal protection rights by enforcing registry, restricting court access, and approving predatory property actions.

Count III – Federal and State Takings / Conversion

Against Eighth Judicial Circuit of Florida, Florida Supreme Court, Miller, Bradford, Sheriff

75. Threat to seize $415,331.50 in improvements and takings of $750,0001+ dental personal injury claims and almost $5,000 in property tax refunds a bankruptcy court ordered the Plaintiffs' could pursue and Plaintiffs bar admissions since the vexatious litigant orders were entered.

76. U.S. Constitution, Fifth and Fourteenth Amendments takings claim and Florida conversion (F.S. §825.101).

77. Plaintiffs invested $415,331.50 in farm improvements in good faith reliance on representations by Miller and Bradford County Telegraph Inc. regarding property ownership and sale.

78. Defendants have threatened to evict Plaintiffs and seize these improvements, without compensation, due process, or a legitimate claim of ownership.

79. Plaintiffs were entitled to protection of property rights, including improvements made to real property, which cannot be taken arbitrarily.

80. Defendants' actions constitute:

Unlawful taking under the Fifth Amendment (applicable to the states via the Fourteenth Amendment), because Plaintiffs' property interest (improvements and anticipated refund, $750,000+ dental personal injury claim) were and are being seized without just compensation;

Conversion under Florida law (F.S. §825.101), as Defendants are attempting to take Plaintiffs' tangible property and monetary improvements.

81. As a result, Plaintiffs have suffered financial loss, deprivation of property, and inability to use or benefit from property, and will continue to suffer irreparable harm unless injunctive relief is granted.

## Count IV – Declaratory Relief (28 U.S.C. §§2201–2202)

82. Plaintiff seeks a declaration that the vexatious litigant orders, lifetime registry, and forced legal restrictions violate federal and state law, ADA Title II, and constitutional protections.

83. Declare systemic policies and vexatious litigant and squatter statutes and rules unconstitutional under ADA Title II and the U.S. Constitution

## Count V – Injunctive Relief

84. TRO / preliminary injunction to:

Prevent eviction/seizure of property improvements and Autism horses and ponies and farm equipment

Ensure access to courts and emergency relief

Require autism accommodations and blanket extra time rules modifications in court processes

85. Plaintiffs seek a preliminary and permanent injunction preventing eviction, seizure of improvements, and denial of court access based on autism traits.

17

## Count VI – Monetary Damages

86. Plaintiffs seek compensatory, consequential, and punitive damages (where authorized), including:

> $415,331.50 for improvements
>
> $750,000+ for lost dental/brain injury recovery
>
> Appx. $5,000 for lost property tax refunds
>
> Lost income from professional horse trainer work
>
> Lost income from bar admission
>
> Emotional distress, medical harms, and reputational losses.

## Count VII – Conspiracy / Civil Rights Violations

87. Defendants conspired to deprive Plaintiff of rights, property, and professional livelihood, intentionally exploiting autism bias.

88. State and private actors conspired to exploit systemic barriers to harm Plaintiff

## VI. PRAYER FOR RELIEF

Plaintiffs respectfully request the Court to:

1. Declare the squatter statures and vexatious litigant orders, statutes, rules, registry, and related policies unconstitutional under Title II ADA and the U.S. Constitution due process and equal protection;

2. Issue TRO and preliminary injunction to prevent eviction or seizure/taking of improvements, autism horses and ponies and farm equipment;

3. Order compensation for $415,331.50 in improvements and lost $750,000+ dental case and almost $5,000 in property tax refunds and bar admissions since the vexatious litigant orders were entered;

4. Any additional relief necessary to restore Plaintiffs to the position before the takings;

5. Award compensatory, consequential, and punitive damages (where authorized);

18

6. Require autism-specific accommodations, autism language interpreter/translator, and blanket extra time rules modifications in all court access and filings;

7. Award costs, interest;

8. Grant any other relief the Court deems just and proper.

JURY TRIAL REQUESTED ON ALL ISSUES TRIABLE TO A JURY

Dated: March 11, 2026

Respectfully submitted,

DAVID FRANK PETRANO, Plaintiff / Debtor Pro Se
2501 SE 143rd Way
Starke, FL 32091    Phone: (727) 808-0446    Email: dpetrano@yahoo.com

MARY KATHERINE DAY PETRANO, Plaintiff / Debtor Pro Se
2501 SE 143rd Way
Starke, FL 32091    Phone: (727) 237-6778    ponyhunterjumper@yahoo.com